# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERENCE KIMBERG,<br>Plaintiff<br>v.<br>UNIVERSITY OF SCRANTON, WYOMING VALLEY HEALTH CARE SYSTEM, INC. and CAROLINE RASKIEWICZ, individually and as Program Director for the University of Scranton,<br>Defendants | No. 3:06cv1209<br><br>(Judge Munley) |

## MEMORANDUM

Before the court for disposition are motions to dismiss filed by the defendants.  The motions have been fully briefed, and oral argument has been held.  The motions are thus ripe for disposition.

**Background**

Defendant University of Scranton ("University") is a private university located in Scranton, Pennsylvania.  (Compl. ¶ 2).  Together with Defendant Wyoming Valley Health Care System, Inc. (hereinafter "Wyoming"), the University provided a Nurse Anesthesia program.  The program is known as the Wyoming Valley Health Care System/University of Scranton School of Nurse Anesthesia.  (Compl. ¶ 3).   Defendant Caroline Raskiewicz is the program director for the School of Nurse Anesthesia.

Plaintiff entered the School of Nurse Anesthesia as a graduate student in August 2004.  The program requires completion of sixty (60) course credits and the successful students attain a master's degree. (Compl. ¶ 9).  Upon his matriculation, plaintiff was provided a "Student Handbook - Class of August 2006," a Graduate Student Catalog, a Graduate Student Handbook and Clinical Sites Handbook.  (Id.).

Plaintiff was required to pay  $2,500.00 per year in clinical fees and a

one time fee of $2,800.00 to Wyoming.  (Compl. ¶ 10).   Plaintiff asserts that paying the required tuition, his acceptance into the program and his matriculation created an implied-in-fact contract.  The contract required the University and Wyoming to comply with the various student handbooks. (Id.).

 A clinical program is included in the School of Nurse Anesthesia. (Compl. ¶ 12).   Plaintiff participated in over two hundred (200) clinical cases between September 2, 2004 and June 2005. (Compl. ¶ 20).  He received positive evaluations in each case.  (Id.).  Plaintiff had fifty-three (53) clinical evaluations between June 2005 and September 20, 2005.  All evaluations were positive.  (Id.).

Clinical evaluations can be marked "met objectives" "failed to meet objectives" or "other."  Up to September 20, 2005, plaintiff had received only "met his objectives" evaluations.  On September 20, 2005, he received an evaluation marked "other."  (Compl. ¶ 21).  Between September 20, 2005 and December 12, 2005, plaintiff obtained positive evaluations on all thirty-three clinical evaluations he received.  (Compl. ¶ 22).  On December 21, 2005, he received a second evaluation marked "other."  (Id.).

After each semester of clinical, the student undergoes a Triannual evaluation.  (Compl. ¶ 14).  All of plaintiff's Triannual evaluations between August 2004 and December 2005 were positive.  (Compl. ¶ 23).

Plaintiff was instructed to go to a meeting in Defendant Raskiewicz's office on December 5, 2005 without any prior notice or warning.   (Compl. ¶ 24).  In attendance at the meeting were plaintiff, Raskiewicz, Ann Culp, the Clinical Director/Education, and M. Jennings, an Administrative Research Assistant.  Raskiewicz confronted plaintiff about difficulties he was having.

Plaintiff stated the he was having no difficulties.   Defendant Raskiewicz asserted that plaintiff was "refusing to communicate" with regard to a demonstration that was to be performed on a mannequin.   Plaintiff refuted the allegations.   Defendant Raskiewicz then accused plaintiff of being unprepared for a part of the program called the "Journal Club."   (Id.)

Plaintiff was "written up" after the meeting, and plaintiff claims that this "write up" was in contravention of the various student handbooks. Over thirty (30) days later, on January 31, 2006, plaintiff received a letter that notified him that he was placed on "probation."  In between the time of the meeting and being placed on probation, plaintiff had received twelve (12) positive clinical evaluations.  (Compl. ¶ 27).    The defendants did not reveal in the letter the "basis of the information or the individuals who allegedly complained about" the plaintiff.   (Id.).

The letter indicated that plaintiff violated "Policy 60.6" by "failing to communicate."  Plaintiff asserts that failure to communicate is not defined in the Handbooks as being a violation of the defendants' policies and procedures.  (Compl. ¶ 27).   The letter cites another section of Policy 60.6, but that section does not correspond with any of the alleged violations. (Compl. ¶ 28).   Thus, plaintiff asserts that he was arbitrarily and capriciously written up and placed on probation.   (Id.).

On March 24, 2006, the defendants provided plaintiff with the option of withdrawing from the program or being dismissed.   Finally, on that same day, the defendants terminated plaintiff from the program for failing to progress during an alleged probationary period. Plaintiff asserts that his termination violated Policy No. 60.6, the rules and regulations for students in the program, the clinical grading policy, and daily verbal and written

evaluations and procedures.

Plaintiff further asserts that the handbooks provide that a student can only be placed on probation for specific reasons. "Failure to communicate" is not a reason. Moreover, if a student is placed on probation and then within the next thirty (30) days receives all positive clinical evaluations, he is automatically removed from probation. Plaintiff asserts that he received all positive clinical evaluations after being placed on probation and yet he was not removed from probation. (Compl. ¶ 38).

Plaintiff also avers that the defendants breached their contract with plaintiff by ignoring the progressive disciplinary steps set forth in Policy 60.6 and by creating policies and procedures that did not exist, and then alleging that plaintiff violated these newly created policies and procedures to justify his termination. (Compl. ¶ 39).

On March 27, 2006, plaintiff appealed his termination from the program. (Compl. ¶ 44). On May 9, 2005, Defendant Raskiewicz informed plaintiff, via a letter, that the appeal would be conducted pursuant to the Student Grievance and Due Process Policy and Procedure. The letter indicated that the defendants would agree to a hearing only if plaintiff agreed to appear without an attorney. (Compl. ¶ 47). Plaintiff asserts that the failure to allow him counsel violated his right to reasonable rules and fair treatment. (Compl. ¶ 50). Evidently, plaintiff did not pursue the hearing after he was told that he could not be accompanied by counsel.

Plaintiff then filed the instant four-count complaint raising the following causes of action: 1) breach of contract; 2) breach of the covenant of good faith and fair dealing; 3) denial of due process; and 4) tortious interference with contract. Plaintiff also makes claims for punitive damages. The

defendants have filed motions to dismiss bringing the case to its present posture.[1]

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiff is a citizen of the Republic of Cameroon, and the defendants are citizens of Pennsylvania. (Compl. ¶ 1 - 4). Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

The defendants raise five issues in their motion to dismiss. We will address them *in seriatim*.

1. Breach of contract

First, the defendants assert that the plaintiff has not asserted a proper

---

[1] The University filed a motion on its own and Wyoming and Raskiewicz filed a joint motion to dismiss. As the motions raise identical issues we shall dispose of them together and refer to the University, Wyoming and Raskiewicz collectively as "defendants."

5

breach of contract claim. After a careful review, we disagree.

To support a claim for breach of contract, a plaintiff must plead: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage. Presbyterian Med. Ctr. v. Budd, 832 A.2d 1066, 1070 (Pa. Super. Ct. 2003).

In the instant case, plaintiff asserts that the student handbooks form a contract between the school and its students. Under Pennsylvania law, the "relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract." Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). "The contract between a private institution and a student is comprised of written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." (Id.).

As set forth above, plaintiff has set forth in his complaint the policies and procedures contained in the written material provided to him by the defendants with which they should have complied. He has also asserted that the defendants did not comply with them. He further asserts that damages in the form of compensatory damages, economic damages, consequential damages, delayed income due to delayed graduation, and lost opportunities. (Compl. ¶ 58). Accordingly, we find that plaintiff has made sufficient assertions to overcome the instant motions to dismiss with regard to the breach of contract claim.[2]

---

[2]One of the principal issues raised by the defendants is that the plaintiff was not entitled to the progressive discipline procedure set forth in

2. Good faith and fair dealing

The second count of plaintiff's complaint asserts a cause of action for breach of the covenant of good faith and fair dealing. (Compl. ¶ 59-65). He asserts that when the defendants changed his evaluation, refused to follow the progressive disciplinary steps set-forth under Policy No. 60.6 and intentionally fabricated violations against him, they violated the covenant of good faith and fair dealing, which is implicit in every contract under Pennsylvania law. (Compl. ¶ 62-64). Defendants argue that this cause of action should be dismissed as plaintiff is seeking to vindicate the same rights in his breach of contract action. After a careful review, we agree with the defendants.

Under Pennsylvania law, the duty of good faith may not be imposed where: "(1) a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith; (2) such implied duty would result in defeating a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid; or (3) there is no confidential or fiduciary relationship between the parties." Agrecycle, Inc. v. City of Pittsburgh, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001).

In the instant case, plaintiff's breach of contract claim involves the same actions that give rise to good faith and fair dealing claim. Accordingly, plaintiff has an independent cause of action to vindicate his right, and he cannot pursue a cause of action based upon "implied" rights.

---

Policy No. 60.6. On the record before us, however, and at this early stage of the proceedings, we cannot determine the extent to which Policy No. 60.6 applied to the plaintiff.

Id.  See also, Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs., 456 A.2d 552, 557 (Pa. Super. Ct. 1983) (explaining that "[t]he law will imply a term only for omitted covenants. There can be no implied covenant as to any matter specifically covered by the written contract between the parties.")

Accordingly, the defendants' motions to dismiss Count II of the complaint, breach of covenant of good faith and fair dealing, will be granted.

3.  Denial of due process

The third count of plaintiff's complaint asserts a denial of due process. In this count plaintiff asserts that the defendants violated the provisions of the various Handbooks, including Policy No. 60.6 when he was placed on probation and ultimately dismissed from the Nurse Anesthesia program. He also asserts that the he was denied due process because the defendants would not allow him the assistance of counsel at his hearing on the appeal of his dismissal from the program.

Defendants assert that this claim should be dismissed because they afforded plaintiff all the rights set forth in the school's policies, but plaintiff failed to avail himself of the procedures available, and that as a matter of law, plaintiff was not entitled to the counsel at the hearing.  After a careful review, we find too many factual issues exist to grant a motion to dismiss on this claim.

Initially, we note that the University of Scranton is a private institution and therefore is not a state actor.  Thus, the University is not bound by the full panoply of Due Process rights that arise out of the United States Constitution. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998) (Explaining that to establish a civil rights

violation, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under of color of state law.  Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law.).

In the private school setting, because the relationship between the student and school is contractual in nature, students are entitled only to those procedural safeguards which the school specifically provides.  <u>Boehm v. University of PA School of Veterinary Med.</u>, 573 A.2d 575, 579 (Pa. Super. Ct. 1990).  "The general rule, therefore, has been that where a private university or college establishes procedures for the suspension or expulsion of its students, substantial compliance with those established procedures must be had before a student can be suspended or expelled." <u>Id.</u>  However, the procedures established by the school must be "fundamentally fair."  <u>Id.</u>

In the instant case, this "due process" claim is more or less an expansion or duplication of the plaintiff's breach of contract claim.  The plaintiff alleges that the school did not comply with the procedures set forth in the student handbook.  The defendants argue that it was the plaintiff himself who did not comply with the requirements of the handbook.  Accordingly, too many issues of fact exist to dispose of this issue at the motion to dismiss stage.  These issues may better be addressed at a trial or in a motion for summary judgment.

The only portion of the complaint that attacks the procedure itself, rather than the manner in which the procedure was carried out, is plaintiff's claim that he should have been allowed to have an attorney present at the hearing on his dismissal.  We find, however, that the policy is not

fundamentally unfair if it provides that the student is not allowed to have an attorney present during the hearing. See id. ("Even in cases of tax supported schools, it is not required that the students be represented by counsel.")  Accordingly, we find that plaintiff's complaint does not properly assert that the policies at issue are fundamentally unfair, and the sole issue is factual/contractual - whether the school and the plaintiff comported with the requirements of the Nurse Anesthesia program's policies.

Thus, the defendants' motion to dismiss the "due process" claim will be granted in part.  It will be granted with regard to whether the policy is fundamentally unfair because it denies the plaintiff to bring his attorney to the hearing, but it will be denied with regard to whether the parties complied with the procedural requirements.

4.  Tortious interference with contract

The final cause of action of plaintiff's complaint is for tortious interference with contract.  The defendants move to dismiss this cause of action, and the plaintiff concedes that this cause of action should be dismissed. (Doc. 19 at 13, Doc. 22 at 14).   Accordingly, the motion to dismiss with regard to the tortious interference with contract claim will be granted.

5.  Punitive damages

In addition to compensatory damages, plaintiff's complaint seeks punitive damages.  The Pennsylvania Supreme Court has explained punitive damages as follows:

> In Pennsylvania, the "function of punitive damages is to deter and punish egregious behavior." Martin v. Johns-Manville Corp., 508 Pa. 154, 169, 494 A.2d 1088, 1096 (1985) (citations omitted). Punitive damages may be imposed for "torts that are committed willfully, maliciously, or so carelessly as

>to indicate wanton disregard of the rights of the party injured." <u>Thompson v. Swank</u>, 317 Pa. 158, 159, 176 A. 211, 211 (1934). Punitive damages are not awarded as additional compensation but are purely penal in nature. See <u>Colodonato v. Consolidated Rail Corp.</u>, 504 Pa. 80, 470 A.2d 475 (1983); <u>Int'l Electronics Co. v. N.S.T. Metal Prod. Co.</u>, 370 Pa. 213, 88 A.2d 40 (1952).

<u>G.J.D. by G.J.D. v. Johnson</u>, 713 A.2d 1127, 1129 (Pa. 1998).

A plaintiff may not recover punitive damages in an action based solely on breach of contract. <u>DiGregorio v. Keystone Health Plan East</u>, 840 A.2d 361, 370 (Pa. Super. Ct. 2003). As set forth above, the sole action remaining in this case is breach of contract. Accordingly, the claim for punitive damages will be dismissed.

**Conclusion**

For the reasons set forth above, the defendants' motions to dismiss will be granted in part and denied in part. They will be denied with respect to plaintiff's breach of contract claim, Count I. The motions will be granted with regard to the claim for breach of the covenant of good faith and fair dealing, Count II. The motions will also be granted with regard to Count III, plaintiff's due process claim, to the extent that plaintiff seeks more than a breach of contract recovery in this count. Count IV, plaintiff's tortious interference with contract claim, will be dismissed. Additionally, the plaintiff's claim for punitive damages will be dismissed. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERENCE KIMBERG,** | **No. 3:06cv1209** |
| Plaintiff | |
| v. | **(Judge Munley)** |
| **UNIVERSITY OF SCRANTON, WYOMING VALLEY HEALTH CARE SYSTEM, INC. and CAROLINE RASKIEWICZ, individually and as Program Director for the University of Scranton,** | |
| Defendants | |

## ORDER

**AND NOW**, to wit, this 2nd day of February 2007, the defendants' motions to dismiss (Doc. 13 & Doc. 14) are **GRANTED** as follows:

1) Count II of the complaint, breach of covenant of good faith and fair dealing is **DISMISSED**;

2) Count III denial of due process is **DISMISSED** to the extent that it seeks anything other than recovery for breach of contract;

3) Count IV, tortious interference with contract is **DISMISSED**; and

4) The claim for punitive damages is dismissed.

The motion is **DENIED** in all other respects.

                                          **BY THE COURT:**

                                          **s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**